UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YLIANEXIS ROBLES,

                Plaintiff,

      v.

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

                Defendant.

No. 16-CV-01557 (KMK)

ORDER ADOPTING R&R

KENNETH M. KARAS, United States District Judge:

Ylianexis Robles ("Plaintiff") brings this Action against the Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge (the "ALJ") to deny Plaintiff's application for disability insurance benefits on the ground that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423, *et seq*. The Court referred the case to Magistrate Judge Lisa M. Smith pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Dkt. No. 5.) Plaintiff and Defendant both moved for judgment on the pleadings. (Dkt. Nos. 11, 15.) On April 9, 2019, Judge Smith issued a Report and Recommendation (the "R&R") recommending that the Court deny Plaintiff's Motion for Judgment on the Pleadings and grant Defendant's Motion for Judgment on the Pleadings. (R&R 40 (Dkt. No. 22).) Plaintiff filed Objections to the R&R on April 23, 2019, (*See* Pl.'s Obj. to the R&R ("Pl.'s Obj.") (Dkt. No. 23)), and Defendant filed a Response on May 7, 2019, (Def.'s Resp. to Pl.'s Obj. ("Def.'s Resp.") (Dkt. No. 24)). For the reasons discussed below, the Court adopts the R&R in its entirety.

## I. Discussion

### A. Standard of Review

#### 1. Review of a Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the portions of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)). "[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (citation and quotation marks omitted); *see also Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (refusing to consider objections filed one day late). Moreover, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in

the original petition will not suffice to invoke de novo review of the magistrate's recommendations." *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and italics omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (same).

## 2. Review of a Social Security Claim

In reviewing a Social Security claim, the reviewing court does not determine for itself whether the plaintiff was disabled and therefore entitled to Social Security benefits. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine de novo whether [the] plaintiff is disabled." (citation, italics, alterations, and quotation marks omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted), *amended on reh'g in part by* 416 F.3d 101 (2d Cir. 2005). Accordingly, a court may overturn an ALJ's determination only if it was "based upon legal error" or "not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation and quotation marks omitted). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), *cert. denied*, 559 U.S. 962 (2010). In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation and quotation marks omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof for the first four steps. . . ." *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citation omitted). If, however, the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth step. *See id.* There, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002) (citation omitted). If the ALJ determines that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citation omitted), the ALJ must deny disability insurance benefits to the claimant, *see* 20 C.F.R. § 404.1520(a)(4)(v).

4

B. Analysis

The Court adopts the recitation of facts set forth by Judge Smith in the R&R, (*see* R&R 1–19), and assumes the Parties' familiarity with it. The Court will repeat only those facts relevant to the consideration of Plaintiff's Objections.

Plaintiff objects to Judge Smith's recommendation that Defendant's Motion be granted and that Plaintiff's Motion be denied. (*See id.* at 40.) Although Plaintiff's objections often merely rehash arguments already decided by Judge Smith, the Court finds that some of the objections are sufficiently distinct and detailed to at least allow de novo review of portions of the R&R without needlessly duplicating the efforts of the magistrate judge. *Cf. Vega*, 2002 WL 31174466, at *2 (refusing to consider objections because the claimant had "simply rearranged many portions of his original brief" and "[i]n fact, throughout his objections, [the claimant] cite[d] back to his original brief in support of his renewed objections"). In particular, the Court responds to Plaintiff's arguments regarding whether the ALJ properly weighed the medical evidence presented. (*See* Pl.'s Obj. 1–12.)

With respect to the first step, there is no argument that Plaintiff was not engaged in gainful employment at the time the application was considered and had not been since March 12, 2011. (R&R 22; *see also* Administrative Record ("A.R.") 24 (Dkt. No. 10).) Nor does either Party dispute that, at step two, the severe impairments at issue are Plaintiff's major depressive disorder, panic disorder with agoraphobia, borderline personality disorder, and arthritis. (*See* A.R. 24.) The ALJ found, at step three, that Plaintiff's severe impairment, or combinations therein, did not "meet[] or medically equal[] the severity of one of the listed impairments in . . . Appendix 1." (*Id.* at 25 (citations omitted).) Then, the ALJ proceeded to step four of the analysis to determine whether Plaintiff had "the residual functional capacity to perform a wide

range of light work," which the ALJ found she did. (*Id.* at 26–27.) Specifically, the ALJ determined that Plaintiff "can lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally. Further, she can sit for up to 6 hours in an 8-hour workday and stand and/or walk for up to 6 hours in an 8-hour workday. The claimant is further limited to 1 or 2 step routine tasks that do not involve production quotas. In addition, she can have little interaction with the public and coworkers. Finally, she will be off task up to 5 percent of the workday." (*Id.* at 26–27.) Next, the ALJ determined that, due to Plaintiff's symptoms, she could not perform any past relevant work, such as her previous work as a fast food cashier and childcare monitor. (*Id.* at 32.) However, based on the testimony of a vocational expert, the ALJ ultimately determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 33.)

### 1. Weighing of Opinion Evidence

To the extent that Plaintiff objects on the grounds that Judge Smith committed error in ultimately concluding that there was sufficient evidence to support the ALJ's conclusion that Plaintiff could work in certain jobs, the Court disagrees. Plaintiff argues that the ALJ ignored some evidence supporting a finding of total inability to work and instead improperly gave credence to evidence undermining such a finding. (*See* Pl.'s Obj. 4.) Much of Plaintiff's Objections to the R&R restate her disagreements with how the ALJ evaluated certain pieces of evidence in the record, but some specifically respond to Judge Smith's findings on the merits of the case. (*See id.* at 1–11; *see also* Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Judgment on the Pleadings ("Pl.'s Mem.") 17–22 (Dkt. No. 12).) When read as a whole, Plaintiff appears to argue that it is common, especially in the realm of mental disability, for findings to be "normal on one

exam yet abnormal on another," and that the resolution of this apparent conflict in the record is "beyond the expertise of a layman" ALJ. (Pl.'s Obj. 3.)

Yet, that is plainly not how the law instructs courts to review an ALJ's social security determination, regardless of the impairment at issue. Indeed, where, as here, there is conflicting medical evidence, the ultimate resolution of whether the claimant qualifies for disability benefits is reserved for the Commissioner. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence." (citation omitted)), *cert. denied*, 570 U.S. 919 (2013). Moreover, "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record." *Clarence W. v. Comm'r of Soc. Sec.*, No. 18-CV-938, 2020 WL 360880, at *2 (N.D.N.Y. Jan. 22, 2020) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Here, although not *every* piece of evidence supported the ALJ's finding that Plaintiff could still perform light work, there was still "substantial evidence in the record" to support such a conclusion. *Lamay*, 562 F.3d at 507. For example, the ALJ noted that Plaintiff had reported difficulty sleeping, needed assistance with certain chores like cleaning or laundry, and experienced fear of going out alone due to panic attacks and anxiety. (A.R. 27.) However, the ALJ determined, from looking at the rest of the record, that these self-reported statements regarding the severity of her afflictions were not entirely credible. In reaching this conclusion, the ALJ relied on consultative examiner Dr. Mahony's January 2013 exam, which revealed that Plaintiff "could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, relate with others, and deal with stress." (*Id.* at 28.) The ALJ also "great[ly]" relied on the findings of Dr. Halperin, who reviewed the "extensive" record before conducting his own observation of Plaintiff. (*Id.* at

7

29.) Dr. Halperin concluded that Plaintiff's "mental impairments did not rise to listing level severity." (*Id.*) Furthermore, the ALJ noted that Dr. Go's February 2013 findings indicated that Plaintiff had only "mild limitations in the abilities to follow work rules, relate to co-workers, accept supervision, and adapt to change," as well as moderate limitations on other issues, such as the ability to "maintain attention and adapt to stressful situations," and severe limitations "in the ability to deal with the public." (*Id.* (record citation omitted).) Although the ALJ noted that Dr. Go concluded that Plaintiff would not be able to work for at least 12 months, the ALJ ultimately chose to give only "some weight" to that, as other pieces of evidence in the record gave more convincing evidence that Plaintiff could indeed engage in some kinds of work. (*Id.*) The ALJ also weighed the credibility and significance of several other medical professionals, including Drs. Goodman, Pierre, Dunn, and Najara, Daphne Moked ("Moked"), LMSW,[1] and the State agency's psychiatric consultant. (*See id.* at 30–31.) Drs. Goodman and Pierre noted that Plaintiff was capable of "low stress work," although Plaintiff might need to miss work more than 3 times per month. (*Id.* at 30.) Drs. Pierre and Dunn also provided an opinion suggesting that Plaintiff was incapable of even low stress work, but the ALJ questioned the credibility of this assessment as it provided "significantly more limiting" restrictions than the rest of the record suggested. (*Id.*) Dr. Najara's and Moked's opinions underwent a similar analysis. (*Id.*) Furthermore, the vocational expert testified that, given Plaintiff's limitations, there were still a number of jobs that Plaintiff could perform, all of which required minimal or no interaction with coworkers or the public. (*Id.* at 33.) For example, potential occupations included marker, which had 1,800,000 jobs available nationally and 69,000 regionally, and table worker, which had 472,000 jobs available nationally and 6,540 regionally. (*Id.*)

---

[1] LMSW stands for "Licensed Master Social Worker."

8

Accordingly, there is substantial evidence in the record to support the ALJ's findings. The ALJ appropriately parsed through various medical opinions, determining that although Plaintiff did suffer from some significant psychiatric limitations, none of them rose to a level obligating her from refraining from any kind of work whatsoever, especially if Plaintiff continued to engage in treatment of her impairments, which had traditionally "consisted of medication management and psychotherapy" and provided the plaintiff with "adequate control of her symptoms." (*Id.* at 32.)[2] The Court sees no need to disturb this well-reasoned conclusion based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation and quotation marks omitted); *see also Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (determining that although social security claimants with psychiatric afflictions may be stable on some days and not stable on others, there was substantial evidence in the record to support the ALJ's conclusion that the plaintiff, "with the proper treatment, could perform work on a regular and continuing basis"); *Santiago v. Saul*, No. 18-CV-4197, 2019 WL 4409450, at *5 (S.D.N.Y. Sept. 16, 2019) (deferring to ALJ's "resolution of the conflict between [a doctor's] finding and the complete record[]" where "the balance of the mental health evidence" suggested that the plaintiff could still perform "simple task instruction work" (citations omitted)); *Dougherty-Noteboom v.*

---

[2] The Court further notes that, in the Second Circuit, "[t]he report of a consultative examiner may constitute substantial evidence to support an ALJ's decision." *Beau, M. v. Comm'r of Soc. Sec.*, No. 18-CV-1170, 2020 WL 586868, at *7 (N.D.N.Y. Feb. 6, 2020) (citation and quotation marks omitted) (collecting cases). Therefore, Dr. Mahony's opinion alone (i.e., that Plaintiff had some psychiatric and cognitive problems but could "perform simple tasks independent, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, relate with others, and deal with stress," (A.R. 28)), could provide substantial support for the ALJ's conclusion. Nevertheless, as discussed, there is no need to rely on Dr. Mahony's assessment alone, as there are multiple other sources that support the ALJ's ultimate conclusion.

*Berryhill*, No. 17-CV-243, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018) (rejecting the argument that the ALJ had "substituted his own medical judgment for [the] expert opinions" of psychiatrists and affirming ALJ's conclusion, based on the various medical opinions on the record, that the plaintiff could still perform some light work).

### 2. Treating Physician Rule

To the extent Plaintiff seeks to challenge the weight of persuasiveness the ALJ gave to the treating physicians' opinions, Drs. Pierre and Najara, the Court finds that the ALJ appropriately applied the relevant standards in deciding to accord "some weight" to their opinions. (A.R. 30; *see also* Pl.'s Obj. 11–12.)

When determining eligibility for disability insurance benefits, the Social Security Administration "give[s] more weight to medical opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Consequently, the ALJ reviewing a claim for disability insurance benefits must likewise give "deference to the medical opinion of a claimant's treating physician." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Id.* (citation omitted). Moreover, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner," and "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation and quotation marks omitted).

If the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider a number of factors in determining how much weight the opinion is due: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion was from a specialist; and (v) any other factors that "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ need not always recite each factor. *See Halloran*, 362 F.3d at 32 (noting that "it [was] unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule," but nevertheless concluding that "the substance of the treating physician rule was not traversed"); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." (citation omitted)).

Judge Smith correctly determined that the ALJ articulated sufficient reasons for only according Drs. Najara and Pierre's opinions some weight instead of controlling weight. (*See* R&R 26–30.) The ALJ noted that Drs. Najara and Pierre's opinions regarding Plaintiff's ability to do work occasionally contradicted each other as well as other record evidence. For example, the ALJ noted that Dr. Najara's opinion that Plaintiff had marked limitations in functioning was undermined by the fact that Plaintiff's mental status examinations yielded "benign" findings. (*Id.* at 30.) The mental status examinations noted that Plaintiff "presented with a depressed or anxious mood and a constricted affect on occasion," but that generally, she had "normal psychomotor activity, intact attention and concentration, thought processes and content within normal limits, and no indication of suicidal or homicidal ideation." (*Id.* at 28 (collecting record citations).) As for Dr. Pierre, the ALJ noted that his two separate assessments "differ[ed]

11

significantly and [were] inconsistent." (*Id.* at 30.) Upon examining the record, it is true that Dr. Pierre's own notes from the period between his two examinations indicated that Plaintiff's symptoms had improved with medication and that Plaintiff had been compliant with taking medications and attending appointments as scheduled. (*Id.* at 763, 772.) And of course, both Dr. Pierre and Najara's opinions were contradicted by the opinions of Dr. Mahony, Dr. Halperin, and Dr. Dunn (which was co-authored by Dr. Pierre) and the testimony of the vocational expert, who stated that some light work roles could accommodate for all of Plaintiff's psychiatric limitations. (*Id.* at 30–31, 33.)

Although the ALJ may not have specifically articulated every factor in the treating physician analysis, an explicit analysis is not necessary, especially where "a searching review of the record [—such as the one conducted by Judge Smith and this Court—] shows that the ALJ has provided good reasons for her evaluation." *Kevin F. v. Comm'r of Soc. Sec.*, No. 18-CV-1454, 2020 WL 247323, at *8–9 (N.D.N.Y. Jan. 16, 2020) (citation and quotation marks omitted) (determining that ALJ properly did not give treating physicians' opinions controlling weight where they "were neither supported, nor consistent with the medical record" (record citation and quotation marks omitted)). Therefore, the Court agrees with Judge Smith that the ALJ had good reason to accord limited weight to the opinions of treating physicians Drs. Pierre and Najara. *See Lopez v. Comm'r of Soc. Sec.*, No. 18-CV-7564, 2020 WL 364861, at *17 (S.D.N.Y. Jan. 4, 2020) (affirming ALJ's decision not to give treating psychiatrist's opinion that the plaintiff suffered from "marked and extreme limitations" controlling weight because medical records and notes indicated that the plaintiff's condition "show[ed] improvement with treatment"), *adopted by* 2020 WL 364172 (S.D.N.Y. Jan. 22, 2020); *Felice v. Saul*, No. 18-CV-603, 2019 WL 6682319, at *6–7 (E.D.N.Y. Dec. 5, 2019) (affirming ALJ's decision not to afford

12

treating physician's opinion controlling weight where the physician's "own findings were inconsistent with an opinion of total disability" and "the overall record fail[ed] to support" the treating physician's opinion").[3]

Because Plaintiff has offered no other objections that merit review of the R&R from this Court, and the Court, having reviewed the thorough and well-reasoned R&R, concludes that Judge Smith committed no error, clear or otherwise.[4]

## II. Conclusion

For the foregoing reasons, the Court adopts Judge Smith's R&R in its entirety, denies Plaintiff's Motion for Judgment on the Pleadings, and grants Defendant's Motion for Judgment

---

[3] Moreover, it is also true that a treating physician's "legal conclusion that the claimant is 'disabled' or 'unable to work' is not [necessarily] controlling because such opinions are reserved for the Commissioner." *Withus v. Saul*, No. 18-CV-10923, 2019 WL 6906972, at *10 (S.D.N.Y. Dec. 19, 2019) (citation and some quotation marks omitted). Given that the ALJ provided substantial evidence to support his analysis that Plaintiff was still capable of doing some light work, the Court agrees with Judge Smith that the limited weight afforded to Dr. Pierre's and Dr. Najara's conclusions on work *ability* was appropriate.

[4] Plaintiff's Objections also include a section regarding the ALJ's evaluation of Plaintiff's credibility. (*See* Pl.'s Obj. 12–15.) However, these arguments are essentially a restatement of Plaintiff's initial arguments in its Motion for Judgment on the Pleadings. (*See* Pl.'s Mem. 22–25.) Plaintiff fails to specifically object to the validity of Judge Smith's subsequent conclusions or the law cited to support those conclusions, namely that the ALJ was entitled to consider the factors he did in evaluating a claimant's credibility, pursuant to regulatory guidelines in 20 C.F.R. §§ 404.1529(c)(3), and that the ALJ appropriately only afforded "slight weight" to his own evaluation of the credibility of Plaintiff's statements. (R&R 36–38.) "It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Ortiz*, 558 F. Supp. 2d at 451 (citation and quotation marks omitted). Thus, the Court only reviews this portion of the R&R for clear error and finds none. *See id.*; *see also Williams v. Comm'r of Soc. Sec.*, No. 15-CV-7526, 2017 WL 1483545, at *3 (S.D.N.Y. Apr. 25, 2017) (reviewing for clear error where the plaintiff only rehashes the same arguments set forth in the original memorandum); *Assenheimer v. Comm'r of Soc. Sec.*, No. 13-CV-8825, 2015 WL 5707164, at *2 (S.D.N.Y. Sept. 29, 2015) (same); *Hernandez v. Comm'r of Soc. Sec.*, No. 13-CV-5625, 2015 WL 5122523, at *4 (S.D.N.Y. Aug. 31, 2015) (same), *aff'd*, 669 F. App'x 599 (2d Cir. 2016).

on the Pleadings. The Clerk of the Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 11, 15), enter judgment for Defendant, and close this case.

SO ORDERED.

DATED: February 24, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE